**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WYNWOOD ENTERTAINMENT, LLC, | Case No. 15-11752-RAM |
| Debtor. _____/ | |

**NOTICE OF FILING EXHIBIT D TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF (I) EMERGENCY MOTIONS FOR REMAND OR, IN THE ALTERNATIVE, FOR DISCRETIONARY ABSTENTION; AND (II) EMERGENCY MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY ATTACHED TO EMERGENCY MOTION OF VMI ENTERTAINMENT, LLC FOR REMAND OR, IN THE ALTERNATIVE, FOR PERMISSIVE ABSTENTION**

VMI Entertainment, LLC hereby files the attached Exhibit D to the *Memorandum of Points and Authorities in Support of (I) Emergency Motions for Remand or, in the Alternative, for Discretionary Abstention; and (II) Emergency Motions for Relief from the Automatic Stay* attached to *Emergency Motion of VMI Entertainment, LLC for Remand or, in the Alternative, for Permissive Abstention* [ECF No. 9], which was inadvertently not filed at the time the motion was filed.

| | |
|---|---|
| Dated: February 2, 2015 | Respectfully submitted, |
| | **GREENBERG TRAURIG, P.A.** |
| | 333 S.E. 2nd Avenue, Suite 4400 |
| | Miami, Florida 33131 |
| | Telephone: (305) 579-0500 |
| | Facsimile: (305) 579-0717 |
| | |
| | By: /s/ John R. Dodd |
| | Paul J. Keenan, Jr. |
| | Fla. Bar. No. 0594687 |
| | keenanp@gtlaw.com |
| | John R. Dodd |
| | Fla. Bar No. 38091 |
| | doddj@gtlaw.com |
| | |
| | *Counsel for VMI Entertainment, LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail, postage prepaid, for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        /s/ John R. Dodd
        JOHN R. DODD

**Electronic Mail**:

- Nicholas B. Bangos    nbangos@diazreus.com
- John R. Dodd    doddj@gtlaw.com, miaecfbky@gtlaw.com;mialitdock@gtlaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Alan J. Perlman    aperlman@ralaw.com, mhannau@ralaw.com

**U.S. Mail**:

Nicholas Bangos
Nicholas B. Bangos, P.A.
100 S.E. 2nd Street
Suite 2600
Miami, FL 33131

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 2012-5691-CA-42

VMI ENTERTAINMENT, LLC,

    Plaintiff,

vs.

GM ENTERTAINMENT, LLC,
YURY BEKERMAN, and
RICARDO BLANCO,
    Defendants.
_____/

ORIGINAL

2025 Tyler Street
Hollywood, Florida
November 11th, 2014
10:15 a.m. - 11:05 a.m.

## DEPOSITION OF JAMES SAADA

Taken before JOANNE CAUDILL, Court Reporter and Notary Public in and for the State of Florida at Large, pursuant to Notice of Taking Deposition filed in the above cause.

SCHOFEL, SOBEL REPORTING, INC.
(305) 324-5431

**EXHIBIT D**

```
 1  either a mortgage or --
 2       A.   Some interest, management for family.
 3       Q.   Okay.
 4            Now, in addition to buying and selling
 5  properties, your business is also involved in writing
 6  mortgages for commercial and residential real estate?
 7       A.   Somewhat, yeah.
 8       Q.   Okay.
 9       A.   Not necessarily me but other family members.
10       Q.   Okay.
11            In the course of your business did you or any
12  entity you were involved in acquire property located at
13  187 Northwest 28th Street Miami, Florida?
14       A.   Yes.
15       Q.   All right.
16            What is located there, sir?
17       A.   Currently or how I bought it?
18       Q.   How you bought it.
19       A.   I bought it as like a CBS, stucco/wood house in,
20  I would say, 2006, early 2006.
21       Q.   That's 2006?
22       A.   Yes.
23       Q.   You purchased it?
24       A.   Yes.
25       Q.   Where was this located?  Is that the Wynwood
```

1  area?

2     A.   Yes.

3     Q.   Had you purchased other properties in the Wynwood
4  area?

5     A.   Yes.

6     Q.   And approximately how many square feet was this
7  building?

8     A.   The house was probably around 11 or 1,200 feet.

9     Q.   And what about the lot?

10    A.   Sixty-nine fifty, 6,950.

11    Q.   And when you purchased it, did you have the
12 intention of doing something with it commercially or
13 residentially?

14    A.   Neither.

15    Q.   Okay.

16    A.   I was accumulating parcels and that was one that
17 was a layover, and then prior to owning it I sold the
18 surrounding property and I was -- for appreciation I
19 bought it.

20    Q.   Okay.

21         And at some point did you offer that property for
22 sale, the CBS/wood house?

23    A.   Yes.

24    Q.   Approximately when was that, sir?

25    A.   I would say sometime mid-2012.

1  Q. All right.

2  And had you made any use of that wood house
3  between 2006 and 2012?

4  A. No. No. I did some renovations, you know. I
5  thought about renting it but just never did.

6  Q. Okay.

7  And did you acquire that property in the name of
8  Raspberry Properties, LLC?

9  A. Initially I acquired under my name and then I
10 transferred it to Raspberry Properties.

11 Q. When you offered it for sale, how did you go
12 about offering this CBS/wood house for sale?

13 A. At one point I listed it with a local broker and
14 then I just put a sign up for sale by owner.

15 Q. Okay.

16 And at some point did you receive a response from
17 an individual who became known to you as Ricardo Blanco?

18 A. Yes.

19 Q. I want to show you some photographs which we have
20 in Exhibit 1, I think it's six photographs, and I would
21 ask if you could take a look at these photographs and ask
22 if you are able to identify the individual in those
23 photographs.

24 A. This one, the first one clearly. The second
25 one -- I mean, I'm assuming it's him but -- yes.

```
 1      Q.    And who is the individual that you see in those
 2  photographs?
 3      A.    Ricardo Blanco.
 4      Q.    Okay.
 5            Now, how is it that you first made the
 6  acquaintance of Mr. Ricardo Blanco?
 7      A.    He called the number on the sign, my cell phone
 8  number, we met in front of the property, and that was it.
 9      Q.    All right.
10            What was said between the parties on the phone
11  call and then subsequently when you got to the property?
12      A.    That he wanted to buy my property.
13      Q.    Okay.
14            Did he indicate what he wanted to do with the
15  property?
16      A.    Not initially, you know.  Later on, you know,
17  restaurant bar, that type of thing he mentioned, but
18  nothing, nothing really.
19      Q.    In the first conversation on the phone, was it
20  just to set up the subsequent meeting at the property?
21      A.    I think it was....  I may have been in the
22  neighborhood and he gave me a call and it happened like
23  within 15 minutes.
24            Yeah, that's the way I recall it.
25      Q.    And when you went to the property, you let him
```

1  Q. And was there anyone else with him at the time?
2  A. Yes.
3  Q. Who was with him at the time?
4  A. His son.
5  Q. Okay.
6     Is that Gregory Blanco?
7  A. Yes.
8  Q. Had you ever met Gregory Blanco before?
9  A. The first time when he saw the property, the
10 first day we met, his son was with him.
11 Q. Did the son say anything?
12 A. No.
13 Q. What about at the closing, did the son say
14 anything?
15 A. Not really.
16 Q. All of the --
17 A. He was a quiet, nice kid.
18 Q. All of the talking at the closing was done by
19 Ricardo Blanco?
20 A. It was pretty quick. I was trying to catch an
21 airplane so there was really no -- there was very light
22 conversation.
23 Q. Again, do you recall Gregory Blanco saying
24 anything at the closing?
25 A. Don't recall.

1            MS. PARIS:  I thought it was 11.
2            MR. KAMILAR:  For purposes of this
3       deposition, if I say AGII or AG11, it's the
4       same.
5   BY MR. KAMILAR:
6       Q.   I hand you what has been marked Plaintiff's
7   Composite Number 2 for Identification, and ask if you know
8   what these document are or purport to be.
9       A.   Yes.
10      Q.   What are those document, sir?
11      A.   My closing documents, my mortgage, my deed.
12      Q.   Let me just kind of go through these for a
13  second.  We've got a Compliance Agreement and Non-Coercion
14  Statement.
15           The Promissory Note is for $250,000, sir?
16      A.   Yep.
17      Q.   All right.
18           It appears to be monthly payments of $1,458.33?
19      A.   Yes.
20      Q.   And this was for a period of 48 months?
21      A.   Yes.
22      Q.   Have they been current in those payments?
23      A.   Yes.
24      Q.   Have they missed any payment?
25           MR. VALORI:  Objection to the form.

```
 1              THE WITNESS: They did not miss one
 2       payment.
 3  BY MR. KAMILAR:
 4       Q.    Have they been late on any payments?
 5            MR. VALORI: Objection to form.
 6            THE WITNESS:   No.  Nope.
 7  BY MR. KAMILAR:
 8       Q.    This Mortgage Deed is the deed by which you
 9  understand you transferred your interest in this property
10  to AG11, LLC?
11       A.    Was that a question?
12       Q.    Yes.
13       A.    Can you repeat the question?
14       Q.    Yes.  This Mortgage Deed, is this the document by
15  which you understand that you transferred your ownership
16  interest from Raspberry Properties, LLC, your owning
17  entity?
18       A.    Yes.
19       Q.    To AG11, LLC?
20       A.    Yes.
21       Q.    Their owning entity?
22       A.    Yes.
23       Q.    Now, sir, in connection with the closing there's
24  also a Deed-in-Lieu Agreement, is there not?
25       A.    Yep.
```

1  Q. And is it your understanding that essentially if they miss a payment you have the right to file this Deed-in-Lieu of Foreclosure?

MR. VALORI: Objection to form.

THE WITNESS: Sorry.

MR. VALORI: Give me half a second.

THE WITNESS: Sorry.

MR. VALORI: That's okay. Go ahead.

THE WITNESS: Yes.

BY MR. KAMILAR:

Q. Okay.

You haven't filed this Deed-in-Lieu of Foreclosure, have you, sir?

A. No.

Q. I had asked you to look to see if you could find the account from which you received a payment of the $250,000. Were you able to determine that, sir?

A. No.

Q. In your research?

A. No.

Q. You had an attorney who represented you in this transaction?

A. Yes.

Q. What is his name?

A. Andrew Lee.

1 has either for himself or through others by way of real
2 property, personal property, cars, boats, anything that we
3 haven't discussed?
4      A.   No.
5      Q.   Do you know any other real property, cars or
6 assets that Gregory Blanco owns either individually or by
7 and through an entity or any other person?
8      A.   No.
9      Q.   Other than what we have discussed?
10     A.   No.
11     Q.   All right.
12          Did you have a discussion with Gregory Blanco
13 recently about potentially buying the building from him?
14     A.   Yes.
15     Q.   In that circumstance you would -- strike that.
16          Did you discuss potentially buying back the
17 building and renting it to him?
18     A.   Yes.
19     Q.   What was his response?
20     A.   He didn't -- wasn't interested.   He was thinking
21 about it.
22          MR. KAMILAR:   Okay.   I have no further
23     questions at this time.
24
25